United States District Court
Southern District of Texas

**ENTERED**

February 22, 2022

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL ACTION H-14-020-03 |
| | § | |
| | § | |
| DEAN LESTER SPRINGER, SR. | § | |

### Memorandum Opinion and Order

Pending before the court are defendant Dean Lester Springer, Sr.'s motion to quash writs of garnishment issued to garnishees CalPERS and Mission Square Retirement (Dkt. 396), motion to vacate the court's restitution order and the corrected restitution order because the initial restitution order is void and unenforceable (Dkt. 406), motion to vacate what Springer contends is a void restitution judgment, applications for writs of *coram nobis* and/or *audita querela*, and, alternatively, motion to quash or vacate writs of garnishment (Dkt. 413), and claims for exemptions along with a request for hearing with regard to the garnishments (Dkts. 416, 417). The Government and Springer have filed various responses and replies to these motions. After considering the motions, responses, replies, the request for a hearing on the garnishments, other relevant items in the record, and the audio of Springer's rearraignment proceeding, the court is of the opinion that Springer's motions to vacate the restitution order and application for writs of *coram nobis* and *audita querela* (Dkts. 406, 413) should be DENIED, the request for an evidentiary hearing on the garnishments (Dkts. 416, 417) should be GRANTED, and the court should DEFER ruling on the garnishments (Dkts. 396, 416, 417) until it can hold the hearing.

## I. BACKGROUND

On January 15, 2014, the Grand Jury returned an indictment that charged Springer's co-defendants, Steven Patrick Jones and John Patrick Acord, with wire fraud, mail fraud, securities fraud, and conspiracy to commit wire fraud. Dkt. 1. Both of these defendants were arrested and pled not guilty at their initial arraignments. Dkts. 29, 43. On May 1, 2014, Jones appeared for a rearraignment and pled guilty pursuant to a plea agreement. Dkt. 32. On October 1, 2014, Springer was included in a superseding indictment that alleges that Jones, Acord, and Springer were engaged in a Ponzi scheme in which people invested more than $10,000,000 in intermodal shipping containers. Dkt. 58. According to the superseding indictment, Jones was the president of the two companies involved in the scheme, Acord was the chief financial officer or a consultant for the two companies, and Springer started out as a salesman for one of the companies and later formed the second one. *Id.* Springer was charged with securities fraud, conspiracy to commit wire fraud, and conspiracy to launder funds. *Id.*

Springer was arrested on October 2, 2014; he appeared for his arraignment and pled not guilty on all charges on October 6, 2014. Dkts. 66, 70. On November 18, 2015, Springer appeared for a rearraignment in front of Magistrate Judge Nancy K. Johnson and pled guilty to Count 11 (securities fraud in violation of 15 U.S.C. §§ 77q(a) and 77x) pursuant to a plea agreement with the Government. Dkt. 176; Dkt 177 (plea agreement). During the rearraignment,[1] Judge Johnson noted that Springer was pleading guilty pursuant to a plea agreement, and, with regard to restitution, she admonished Springer as follows:

> Judge: If your guilty plea is accepted the court may also order you
> to make restitution to any victim. Is restitution an issue at this time?

---

[1] There is no transcript of the rearraignment. However, when the court was alerted to the issues Springer presents, it was able to obtain the audio recording of the 2015 hearing from its archives.

> Unknown Speaker: It is. He will be ordered to pay restitution.
> Judge: You understand that?
> Springer: Yes.
> Judge: And that will be determined at a later time by Judge Miller.
> You understand?
> Springer: Yes.

In the plea agreement, Springer agreed that "any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment." Dkt. 177.  Springer also waived his right to appeal his sentence in his plea agreement.  *Id.*

On February 24, 2017, Springer was sentenced to serve twelve months and one day in custody.  Dkt. 288.  He was then to be under supervised release for three years, pay a $100 special assessment, which was waived, and pay restitution, jointly and severally, with his co-defendants.[2] *Id.*; Dkt. 292 (judgment).  The Government moved to dismiss the remaining counts, and the court granted that motion.  Dkts. 289, 290.  In the accompanying written judgment, the court noted that Springer was adjudicated guilty of 15 U.S.C. §§ 77q(a) and 77x and 18 U.S.C. § 2, that the remaining counts were dismissed on the Government's motion, that Springer would be on supervised release for three years upon release from imprisonment, and that he was required to make restitution to the victims of $3,198,302.90, jointly and severally with his co-defendants. Dkt. 292.  Any remaining balance on the restitution after Springer's prison term was to be paid in monthly installments of $200.  *Id.*  The judgment specifies that the criminal monetary penalties were joint and several with "any co-defendant who has been or will be ordered to pay restitution

---

[2] Specifically, the court stated during the sentencing, "It if further ordered that the defendant is jointly and severally liable to pay restitution totaling $3,198,302.90 to each victim as identified in the attachments to the presentence report, jointly and severally with Steven Patrick Jones in the full amount and with John Patrick Acord in the full amount.  The defendant's restitution obligations shall not be affected by any restitution payments that may be made by other defendants in this case, except that no further payment shall be required after the sum of the amounts paid by all the defendants has fully covered all the compensable losses." Dkt. 303.

under this docket number."[3]  *Id.*  Springer has now served his term and completed his period of supervised release.  Dkt. 413 ("Mr. Springer's supervised release ended on February 22, 2021).

Springer's current arguments include an argument about Acord's restitution requirement, so the court will briefly discuss the relevant aspects of Acord's case.  Acord was arraigned on the first superseding indictment on October 21, 2014, and he pled not guilty.  Dkt. 74.  On February 10, 2016, the Government filed a 12-count second superseding indictment against Acord. Dkt. 185.  Acord was arraigned under the second superseding indictment on February 17, 2016, and he pled not guilty.  Dkt. 189.  On May 5, 2016, Acord was rearraigned and pled guilty to Count 12 in the second superseding indictment pursuant to a plea agreement and waived his right to appeal.  Dkt. 205, Dkt. 206 (plea agreement).  Like Springer, Acord agreed in his plea agreement that "any fine or restitution imposed by the Court [would] be due and payable immediately" and agreed not to "attempt to avoid or delay payment."  *Id.*  The court sentenced Acord to sixty months in custody and three years of supervised release on December 20, 2016 (prior to Springer's sentencing) and ordered him to pay restitution.  Dkt. 253.  Like Springer's written judgment, Acord's judgment indicates he pled guilty to violating 15 U.S.C. §§ 77q(a) and 77x and 18 U.S.C. § 2 and that he was required to make restitution to the victims—though his total restitution is higher.  Dkt. 263.  He also had to make payments of $200 per month during his supervised release, and the restitution was joint and several with "any co-defendant who has been or will be ordered

---

[3] Acord had been sentenced and ordered to pay restitution prior to Springer's sentencing, and he had already filed a notice of appeal.  Dkt. 253 (Acord sentencing); Dkt. 257 (Acord notice of appeal).  Jones was not sentenced until October 23, 2018, but his restitution was also joint and several with his co-defendants.  Dkt. 342.  Acord's and Jones's total joint and several restitution amount in their original judgments was $8,286.060.22—significantly higher than Springer's because of their involvement in the original company.  *See* Dkts. 263, 345.

to pay restitution under this docket number."[4]   *Id.*   The Government moved to dismiss the remaining counts, and the court granted the motion.   Dkts. 254, 255.   Notwithstanding his agreement not to appeal in the plea agreement, Acord immediately filed a notice of appeal. Dkt. 257.

On January 15, 2020, the Fifth Circuit issued an unpublished decision in Acord's appeal. *United States v. Acord*, 790 F. App'x 18 (5th Cir. 2020).   The Fifth Circuit noted that the Government was not seeking to enforce Acord's appeal waiver with regard to the restitution order even though Acord knowingly and voluntarily waived his right to appeal.   *Id.* at 19.   The Fifth Circuit pointed out that the court may only award restitution when authorized by statute.   *Id.* Neither the Mandatory Victims Restitution Act (18 U.S.C. § 3663A), which requires a restitution award, nor the Victim and Witness Protection Act (18 U.S.C. § 3663), which allows for discretionary restitution, authorizes restitution for violations of Title 15, and Acord's (and Springer's) crimes were violations of statutes contained in Title 15.   *Id.*   Of course, as noted by the Fifth Circuit, courts may order restitution as a condition of supervised release pursuant to 18 U.S.C. § 3583(d) even if § 3663(a) does not authorize it.   However, the record did not indicate whether this court had considered restitution as a condition of supervised release.   *Id.*   The Fifth Circuit vacated Acord's restitution order and remanded the case back to this court "for proceedings consistent with [the Fifth Circuit's] opinion."   *Id.* at 20; *see also* Dkts. 378,379.   After remand, the

---

[4] The court entered an amended judgment to correct a clerical error on January 12, 2017.  Dkt. 269. The court amended the judgment again on March 12, 2019, and this amended judgment listed the restitution amounts of the three defendants and clarified the amounts owed by the three defendants. *See* Dkt. 371.  Springer was jointly and severally liable for $3,198,302.90, whereas the other two defendants were jointly and severally liable for $7,546,026.40.  *Id.*  The court recently amended the judgments again to correct what the Government stated was a mathematical error in favor of the defendants.  *See* Dkts. 393; 395, 421, 424.

Government and Acord reached an agreement relating to restitution, and Acord completed his restitution obligation.  Dkt. 383.

Springer did not seek any modification in his restitution order as a result of the resolution of Acord's appeal—at least not at the time (January 15, 2020).  It appears that Springer continued to pay the monthly payment required by the judgment in his case until the Government filed a motion for writs of garnishment to his retirement account (CalPERS) and a separate account that he contends he established for his wife's retirement (Mission Square).  Dkts. 387, 388.  The court granted the motions for writs, which were issued to the financial institutions holding the retirement funds.  *See* Dkt. 389, 390.  CalPERS filed its response on December 17, 2021.  Dkt. 391.  On December 21, 2021, Springer sent the court a letter objecting to the garnishments because he had been paying the required amounts in a timely manner.  Dkt. 392-1.  On January 4, 2022, Springer filed a supplemental answer and motion to quash the writs.  Dkt. 396.  He noted that all of his ordered payments had been made on time and there was no "significant change to the defendant[']s or his spouse[']s finances . . . from the time of sentencing to justify this garnishment of retirement funds."  *Id.*  On January 6, 2022, Springer filed an objection to the CalPERS response, noting that CalPERS did not list the fees and Oregon taxes that are withheld.  Dkt. 397.  On January 10, 2022, the Government filed responses to the motion to quash, arguing that a lien arose in favor of the Government on all of Springer's non-exempt property and that it discovered the non-exempt retirement accounts, noted the amounts in the defendant's and his spouse's accounts, "believe[d] there ha[d] been a material change to Defendant's economic circumstances since December 2016," and moved for the writs.  Dkts. 398, 399.  On January 25, 2022, Springer filed exemption statements relating to the garnishment and requested a hearing.  Dkts. 416, 417.

In the meantime, on December 30, 2021, the Government filed a motion to correct an arithmetic error on the restitution orders for Springer and Jones.  Dkt. 393.  The Government stated that the "attached spreadsheets simply correct the arithmetical error in the total loss column of the original judgments."  *Id.*  This motion sought to decrease the total amount of restitution owed because the initial spreadsheet contained entries for investors who were not owed restitution.  *See id.*  The motion stated that "Defendant John Patrick Acord is not affected by this motion because he has completed supervised release and no longer has a restitution obligation."  *Id.*  Since the motion sought to merely correct a clerical error that was in Springer's favor, reducing his overall obligation, the court did not wait for a response and granted the motion on January 4, 2022, noting that the corrected spreadsheets would be attached to the judgments.  Dkt. 395.  An amended judgment with the correct arithmetic was issued on January 27, 2022.  Dkt. 424.  This amended judgment was issued on a different form than the original judgment, and under "mandatory conditions" there is a new category checked: "You must make restitution in accordance with 18 U.S.C. § 3663 and 3663A or any other statute authorizing a sentence of restitution."  Dkt. 424.  Springer objects to the court granting the motion to correct the arithmetic error and entering new judgments, with regard to the restitution, without the benefit of his response.  Dkt. 406 ("Mr. Springer would object to the Court entering any order either adjusting or enforcing a restitution order that the Government has previously admitted is void and unenforceable.").

That brings the court to the heart of the current issue.  Springer moves to vacate the restitution order portion of the judgment against him as null and void, basing his arguments on a concession that the Government made during Acord's appeal as well as the Fifth Circuit opinion, and he argues that the recently entered amended judgment relating to restitution is likewise null and void.  Dkts. 406, 413.  He notes that the Government conceded that Acord's identically worded

7

restitution order based on the same statutes of conviction should be vacated, and the Government therefore should be estopped from arguing that Springer's restitution order is valid under the law of the case doctrine.  Dkt. 413.  He argues in the alternative that he is entitled to relief under either a writ of *coram nobis* or a writ of *audita querela*.  *Id.*  He also requests that if the court does not entirely vacate the restitution orders, the garnishments should be quashed under the same arguments or because he has either fully complied with the judgment as written or enforcing the garnishments will leave him without resources to pay for reasonable and necessary household living expenses.  *Id.*

The Government first asserts that Springer's objection to the garnishment should be overruled because the Government is not seeking to garnish any exempt items.  Dkt. 418 (citing 26 U.S.C. § 6334(a)(2) (setting forth exemption categories)).  The Government seeks a final order of Garnishment, arguing that Springer's financial situation has changed and that Springer did not fully disclose all of his assets to this court.  *Id.*  As far as the motions to vacate the restitution order and the requests for writs of *coram nobis* and *audita querela*, the Government argues these requests should be denied because (1) it is too late under Rule 33 to challenge the restitution and the time limits are jurisdictional; (2) restitution is allowed if it is part of a plea agreement and the defendant was admonished about it; (3) restitution is also allowed if it is made a condition of supervised release; (4) Springer failed to timely pursue his *coram nobis* argument; (5) the defendant cannot demonstrate a fundamental error with the court's restitution order; and (6) the Fifth Circuit's opinion in *Acord* does not constitute a new legal objection that arose subsequent to judgment and thus cannot form the basis of a writ of *audita querela*.  Dkt. 419.

Springer filed a reply that addresses the garnishment responses.  Dkt. 427.  He contends that the Government lacks authority to garnish any of Springer's funds because even if the court

rules against Springer on his various motions, the court still should quash the garnishments under 28 U.S.C. § 3013.  *Id.*  Springer argues that his financial conditions have remained unchanged, that he is a former firefighter, and that he and his wife are ineligible for social security and depend on the CalPERS and Mission Square accounts to fund them for the remainder of the lives.  *Id.*  He provides explanations for the issues the Government points to in its motion for final order of garnishment.  *Id.*

The court will first address whether Springer may challenge the restitution order at this late date, and then, if not, whether he is entitled to any relief under the ancient remedies of *coram nobis* or *audita querela*.  The court will then turn to the garnishments.

## I. IS THE CHALLENGE TO THE RESTITUTION ORDER TIMELY?

Springer's objections to the restitution order hinge on whether the Government's concession and the Fifth Circuit's subsequent ruling on the restitution portion of Acord's judgment in the *Acord* appeal applies to Springer's case under the law of the case doctrine or some other equitable principle.  He first argues that the concession and ruling justify vacating the restitution order pursuant to Federal Rule of Criminal Procedure 33.  Dkt. 406.  The Government argues that a Rule 33 challenge to the court's judgment in Springer's case must have been brought within periods of time that are long since passed and that the time restrictions in the rule are jurisdictional, thus barring the court from acting at this late date.  Dkt. 412.

Federal Rule of Criminal Procedure 33 allows a court to vacate a judgment "if the interest of justice so requires," but it imposes time limits.  Fed. R. Crim. P. 33.  If the reason for vacating the judgment is newly discovered evidence, the motion "must be filed within 3 years after the verdict or finding of guilty."  Fed. R. Crim. P 33(b)(1).  A motion based on "any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."

Fed. R. Crim. P. 33(b)(2).  The Fifth Circuit has characterized the time-period restrictions "provided in Rule 33 [as] jurisdictional."  *United States v. Erwin*, 277 F.3d 727, 732 (5th Cir. 2001).  The U.S. Supreme Court, while noting that it has often stated these time periods in Rule 33 are "mandatory and jurisdictional," clarified that Rule 33 is an inflexible "claim-processing" rule that assures "relief to a party properly raising [it], but [does] not compel the same result if the party forfeits them."  *Eberhart v. United States*, 546 U.S. 12, 19, 126 S. Ct. 403 (2005).  The time limit is not impacted if a judgment is amended due to a defect in the judgment.  *See Erwin*, 277 F.3d at 732.

Springer, without addressing the timing, argues that the court may grant a new trial if the defendant demonstrates adverse effects on his or her substantial rights.  Dkt. 406.  He points to the Fifth Circuit's finding that Acord's restitution order, which is identical to Springer's, affected Acord's substantial rights because there was no statutory authorization for the restitution.  *Id.*  The difference, of course, is Acord—notwithstanding his waiver of appeal—appealed immediately.  It has been almost five years since Springer was sentenced, and his request that the court revisit whether it had an adequate statutory basis—*at the time of his sentencing*—to require him to pay restitution to the victims of his crime is extremely untimely.  The law has not changed.

Springer is asking the court to overlook the differences in procedural posture between his case and Acord's—including the fact that he did not challenge the restitution order when entered—and conclude that because the Fifth Circuit held that the restitution order in *Acord* did not have a statutory basis, neither does Springer's.  The court, however, is unwilling to consider this challenge at this time.  The time limits imposed by Rule 33 are, as stated by the Supreme Court, "inflexible," and this request is untimely.  Accordingly, Springer's motion to vacate pursuant to Rule 33 is DENIED.

## II.  Is the Restitution Order Null and Void Under the Law of the Case Doctrine

Springer insists that the restitution portion of the judgment against him is null and void under the law of the case doctrine because his restitution order is worded the same as Acord's and they were both convicted under the same statutes.  Dkt. 406 (citing *Acord*, 790 F. App'x 18). While the court has already determined Springer's request is untimely under Rule 33, it will address the law of the case doctrine in an abundance of caution.  Under the law of the case doctrine, "'a decision of a legal issue or issues by an appellate court establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal.'"   *United States v. Vahlco Corp.*, 895 F.2d 1070, 1072 (5th Cir. 1990) (quoting *Goodpasture, Inc. v. M/V POLLUX*, 688 F.2d 428, 431–32 (5th Cir. 1982)).

There is no question that the law of the case applies only to the same legal issue or issues, not different ones.  Springer contends that the restitution language in his plea agreement and the portion of the judgment requiring restitution have the exact same wording as Acord's, so the Fifth Circuit's finding of error with regard to Acord's restitution order also applies to Springer's restitution order, rendering the requirement in Springer's judgment to pay restitution null and void. The Government asserts that it conceded error to the Fifth Circuit in *Acord*, but the court (this court) failed to admonish Acord at the rearraignment about restitution, and this "was a coupling factor" to its concession that section 3663(a)(3) did not provide a statutory basis for restitution in Acord's "unique circumstance." Dkt. 412.  1(a)(2)).  In its supplemental response, the Government notes that the *Acord* opinion reaffirms what it had already agreed to—that 18 U.S.C. § 3663(a)(1)(A) did not provide a statutory basis for restitution at the time of the sentencing. Dkt. 419.  However, it argues that restitution orders made pursuant to plea agreements are recognized under 18 U.S.C. § 3663(a)(3) even if the statute of conviction is not listed in 18 U.S.C.

11

§ 3663(a)(1)(A).  *Id.* (citing *United States v. Owusu*, No. 20-50630, 2021 WL 3854769 (5th Cir. Aug. 27, 2021) (per curiam) and several other cases).

Under 18 U.S.C. § 3663(a)(3), the "court may . . . order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."  Under Federal Rule of Criminal Procedure 11(b)(1)(K), when accepting a guilty plea, "the court must inform the defendant of, and determine that the defendant understands, . . . the court's authority to order restitution."  Springer's and Acord's rearraignments were in front of different judges, and Acord's agreement to pay restitution as part of his plea agreement was not mentioned during his rearraignment.[5]  Dkt. 210.  Springer does not contend that the Magistrate Judge failed to admonish him that restitution was required as part of the plea agreement at his rearraignment.  *See* Dkt. 176 (Springer rearraignment minute entry); Dkt. 210 (Acord rearraignment trans.).  And, in fact, the audio recording of the rearraignment proceedings demonstrates that the Magistrate Judge did, in fact, admonish Springer that he would be required to pay restitution, and Springer acknowledged that he would.[6]

Springer has not shown that the restitution order is null and void under the law of the case. Certainly, when the Fifth Circuit reaches a decision on appeal in a case it "establishes the 'law of the case,'" and this court would be bound to follow it in subsequent proceedings in the same case.

---

[5] The court notes that during Acord's rearraignment, it asked both the Government and Acord's counsel, "Are there any additional admonishments you can think of at this point that I should provide to him?" Dkt. 210.  Both responded in the negative.  *Id.*

[6] The Government asserts that even if Springer were not so admonished, the judgment indicates that restitution is part of Springer's supervised release, and making restitution a condition of supervised release is permissible under 18 U.S.C. § 3583(d).  *See Acord*, 790 F. App'x at 19 (noting that restitution as a condition of supervised release in accordance with 18 U.S.C. § 3583(d) is permissible regardless of the limitations of § 3663(a)) (relying on *United States v. Dahlstrom*, 180 F.3d 677, 686 (5th Cir. 1999) and U.S.S.G. § 5E1).  This is inconsequential since he was also admonished about it when he pled guilty pursuant to the plea agreement, though of course he also could have been ordered to pay as a condition of release and in fact did make his payments during his supervised release.

*Lyons v. Fisher*, 888 F.2d 1071, 1074 (5th Cir. 1989) (cleaned up).  However, it is first important to note that the decision was reached with regard to a co-defendant whose plea was separate from Springer's.  Second, to the extent a ruling on one defendant's case on appeal in the Fifth Circuit applies to other defendants in a criminal case involving co-defendants (that it is the "same case"), the holding in Acord's appeal still is not applicable to Springer.[7]  Notwithstanding the identical language in the plea agreements' phrasing that seems to implicate only the timing of restitution payments, which the Fifth Circuit noted in the Acord appeal, the obligation to pay restitution was clarified during Springer's rearraignment when the Magistrate Judge admonished Springer that restitution would be part of his sentence if he decided to plead guilty pursuant to the plea agreement.  This did not happen in Acord's case.  The law of the case doctrine does not apply because Springer's situation is *not* the same legal situation that the Fifth Circuit was considering in *Acord*.  Accordingly, Springer's motion to vacate the restitution order based on the law of the case doctrine is DENIED.

### III.  SHOULD THE COURT ISSUE WRITS OF *CORAM NOBIS* OR *AUDITA QUERELA*?

Springer argues in the alternative that the court should apply the common-law remedies of *coram nobis* or *audita querela* to vacate the restitution order.  Dkt. 413.  These are common law remedies that historically correct inequities when no statutory remedies are available.

---

[7] Several other circuits have applied the law of the case doctrine to co-defendants in criminal cases. *See, e.g.*, *United States v. LaHue*, 261 F.3d 993, 1010 (10th Cir. 2001); *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999); *United States v. Bushert*, 997 F.2d 1343, 1355—56 (11th Cir. 1993); *United States v. Schaff*, 948 F.2d 501, 506 (9th Cir. 1991) (noting that the law of the case doctrine is "applicable when the appeal of one co-defendant is decided prior to the appeal of the other co-defendant, if both were convicted at the same trial").

A.      **Writ of *Coram Nobis***

"The writ of *coram nobis* is an ancient common-law remedy designed 'to correct errors of fact.'" *United States v. Denedo*, 556 U.S. 904, 910, 129 S. Ct. 2213 (2009) (quoting *United States v. Morgan*, 346 U.S. 502, 507, 74 S. Ct. 247 (1954)).  It is available in modern times under the All Writs Act, and it is "broader than its common-law predecessor" as it can be used as a "tool to correct a legal or factual error." *Id.* at 911–13.  However, it is an "extraordinary remedy" and may only be used in "cases presenting circumstances compelling its use 'to achieve justice.'" *Id.* (quoting *Morgan*, 346 U.S. at 511).  Additionally, a writ of *coram nobis* "may not issue when alternative remedies, such as habeas corpus, are available." *Id.*  The writ of *coram nobis* "was traditionally available only to bring before the court factual errors 'material to the validity and regularity of the legal proceeding itself,' such as the defendant's being under age or having died before the verdict." *Carlisle v. United States*, 517 U.S. 416, 429, 116 S. Ct. 1460 (1996) (quoting *United States v. Mayer*, 235 U.S. 55, 67–68, 35 S. Ct. 16 (1914)).  The U.S. Supreme Court has stated, more than once, that "'it is difficult to conceive of a situation in a federal criminal case today where a [writ of *coram nobis*] would be necessary or appropriate.'" *Id.* (quoting *United States v. Smith*, 331 U.S. 469, 67 S. Ct. 1330 (1947)).

Springer argues that a writ of *coram nobis* is appropriate in his situation because he is no longer in custody and thus not able to obtain relief under 28 U.S.C. § 2255.  Dkt. 413 at 9 & n.11. He asserts that he has met the following four prongs: (1) a "continuing civil disability as a consequence of the prior conviction," (2) "exercise of 'reasonable diligence in seeking prompt relief'"; (3) "no other remedy available"; and (4) that there will be a "'complete miscarriage of justice'" if relief is not granted.  Dkt. 413 (quoting *United States v. Dyer*, 136 F.3d 417, 427 (5th Cir. 1998), and *United States v. Castro*, 26 F.3d 557, 559 (5th Cir. 1994)).  The court, however, is

14

not convinced that Springer exercised reasonable diligence in seeking prompt relief or that there will be a complete miscarriage of justice without relief.

"It has long been recognized that a petitioner seeking *coram nobis* must exercise 'reasonable diligence' in seeking prompt relief." *Dyer*, 136 F.3d at 427. Springer argues that his challenge to the restitution figure is timely because the Government filed a sealed motion to amend the restitution amount in December 2021 and the court granted it on January 3, 2022, but the time to file a direct appeal had expired in 2017. Dkt. 417. He asserts that relief is appropriate because the Government "recognized that it made a fatal error regarding Acord's judgment" and "abandoned arguing Acord's appellate waiver, all potential defenses, confessed error, and asked the Fifth Circuit to vacate Acord's restitution order"; apparently, he believes the same should apply in his case. *Id.* The Government argues that the request for a writ of *coram nobis* is untimely because Acord's appeal was underway when Springer was sentenced, yet Springer did not contest his restitution requirement at that time, and the *Acord* decision issued on January 15, 2020, yet Springer did not challenge the restitution order based on this decision under almost two years later. Dkt. 419.

The court agrees with the Government. The recent motion to amend the restitution order and subsequent order doing so was based on an arithmetic error and did not somehow restart the clock on timeliness for relief from the judgment—and neither did the motions for garnishment. The only possible event in this case that *may* have started a clock is the Government's concession in *Acord* or the Fifth Circuit opinion in *Acord*, and there is no way that a motion for relief filed on December 23, 2021, based on an order issued on January 15, 2020, and docketed in this court on February 6, 2020, could be considered exercising reasonable diligence. Moreover, even if Springer just learned about the *Acord* decision and the Government's concession in that case when the

15

Government filed its motion to amend the judgment or its requests to garnish the retirement accounts—and he does not allege that this is the case—he has not demonstrated that there would be a complete miscarriage of justice if the court were to decline to issue a writ of *coram nobis*. While the Government acknowledged that there were issues with Acord's restitution order, which was identical to Springer's, the Government points to its actual concession in the brief it filed with the Fifth Circuit. *See* Dkt. 419; Dkt. 406, Ex. 1 (the 5th Cir. Brief). In the brief, the Government noted that restitution is allowable as part of a plea agreement, but the plea agreement in Acord's case only addressed the timing of restitution, not the substance, and the court failed to admonish Acord at his rearraignment about the restitution as required by Federal Rule of Criminal Procedure 11(b)(1)(K). Dkt. 406, Ex. 1. The Government conceded that *in this situation* there was no statutory basis for a restitution award. *Id.* The Government also noted that restitution was proper as a condition of supervised release and that the Fifth Circuit could remand and order the district court to consider whether to make the restitution a condition of release. *Id.* The Fifth Circuit then vacated the restitution order and remanded for proceedings consistent with its opinion that the order did not comply with statutory requirements and the district court's order did not indicate the restitution was a condition of supervised release. Dkt. 379.

Here, the court agrees that the discussion of restitution in the plea agreement, which is identical in both Springer's and Acord's agreement, is bare bones: "Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment." Dkt. 177. This alone does not sufficiently inform the defendant that he is agreeing to be jointly and severally liable for restitution. However, as noted above, the rearraignment recording demonstrates that Springer was advised that restitution was part of the deal when he pled guilty—and he agreed that he knew it was part of the deal. If he did

16

not want to chance having to pay whatever restitution Judge Miller was going to require to compensate victims at his sentencing, then he had the opportunity to refuse to plead guilty when Judge Johnson admonished him that restitution would be on the table. The application for a writ of *coram nobis* is DENIED.

**B.    Writ of *Audita Querela***

Springer requests, in the alterative, that the court issue a writ of *audita querela*. Like the writ of *coram nobis*, the writ of *audita querela* is an ancient common-law remedy.

> The writ of *audita querela* is a common law writ dating from the reign of Edward III that constitutes the initial process in an action brought by a judgment defendant to obtain relief against the consequences of the judgment on the ground that some defense or discharge has arisen since its rendition that could not be taken advantage of otherwise. *United States v. Reyes*, 945 F.2d 862, 863 n.1 (5th Cir.1991); Black's Law Dictionary 150 (9th ed. 2009). *Audita querela* is distinguished from *coram nobis* in that *coram nobis* attacks the judgment itself, whereas *audita querela* is directed against the enforcement, or further enforcement, of a judgment which, when rendered, was just and unimpeachable. 7A C.J.S. *Audita Querela* § 4 (2004).

*United States v. Miller*, 599 F.3d 484, 487 (5th Cir. 2010). According to the Fifth Circuit, since the U.S. Supreme Court has stated that the writ of *coram nobis* is still available under the All Writs Act if it is "needed to fill a gap in the federal post-conviction remedial scheme," it also—"with some reservation"—acknowledges that "the writ of *audita querela* might also survive in criminal adjudications, if there is a gap for it to fill." *Id.* at 487–88. If it survives, "it can only be available where there is a legal objection to a judgment which has arisen subsequent to that judgment." *Id.* (citing *United States v. Reyes*, 945 F.2d 862, 866 (5th Cir. 2001)). It may not be based purely on equitable grounds, and it cannot be raised if there is no other post-conviction remedy available. *Id.* at 488.

Springer notes that a writ of *audita querela* "challenges a judgment that was correct when it was rendered but is made infirm by matters that arose after the judgment's rendition." Dkt. 413. He argues that Springer had no way of knowing that Acord, who had also waived the right to appeal, would appeal and obtain a new rule from the Fifth Circuit that was not dictated by precedent at the time. *Id.* He asserts that the "Government's confession [of] error [in *Acord*] created a defense or discharge that arose after rendition of Mr. Springer's February 2017 Judgment and which could not be taken advantage of otherwise. *Id.* The Government argues that the Fifth Circuit did *not* create a new rule or law in *Acord*, as the waiver of a plea agreement provision is not new and it certainly does not provide a new defense for a separate defendant. Dkt. 419.

The court agrees with the Government that a writ of *audita querela* is unavailable in this case. There is no new law that was unavailable to Springer when he was sentenced and the court ordered restitution. The Fifth Circuit determined, in an unpublished opinion, that the restitution requirement in a co-defendant's judgment was not tied to a statute allowing restitution. It is not new that restitution must be tied to a statute. And Springer's restitution order is, in fact, tied to the statute authorizing restitution as part of a plea agreement. Accordingly, the application for a writ of *audita querela* is DENIED.

### IV. SHOULD THE COURT VACATE ITS RECENTLY CORRECTED JUDGMENT?

Springer also objects to the court granting the Government's motion to correct the judgment, which he contends is null and void, because he did not have the opportunity to respond. His argument as to why the court should not have granted the motion is that the original restitution order is null and void and the court therefore should not have amended it. Dkt. 406. He does not argue that there was not an arithmetic error that needed to be corrected or complain about the new

18

form. *Id.* The court has now considered his arguments with regard to amending the judgment and OVERRULES Springer's objection.

## V. WHAT ABOUT THE GARNISHMENTS?

The Government sought to garnish Springer's and his wife's retirement accounts after reviewing Springer's financial statement from August 2021 and comparing it to his Presentence Investigation Report from 2016. Dkt. 418. The Government asserts that it learned that the Mission Square retirement account, which had been represented to be Springer's wife's retirement account, is comprised entirely of Springer's money. *Id.* The Government also contends that Springer's financial situation has changed. *Id.* It notes that while the defendant claims he receives only approximately $6,725.46 per month in net income from his CalPERS retirement, his spouse is receiving no income, and his expenses are $6,231.00, making his financial situation dire, Springer and his wife did not access the $283,600 available in the Mission Square account. *Id.* Additionally, the Government found out that the defendant and his wife attempted to purchase a house in Oregon for $624,900.00 and sought a loan for $499,920.00; the loan required earnest money of $18,747.00 and a down payment of $106,233.00. *Id.* Ultimately, the Springers were denied credit and did not purchase this property. *Id.* The Government believes that this attempt to buy a house with a steep down payment, the untouched Mission Square account, and at least one previously undisclosed account with $5000 in it indicates that the Springers' financial burdens are not as severe as Springer indicates. *Id.*

Springer paints an entirely different picture. Dkt. 427. He argues that his financial conditions are unchanged. *Id.* Springer explains that he and his wife are ineligible for Social Security because he is a former California public employee (a firefighter); they are both 61 years old, and the retirement accounts are the only funds they have for the remainder of their lives. *Id.*

19

He notes that the bank accounts that the Government alleges he did not disclose were opened after his 2016 disclosures.  *Id.*  He asserts that his attempt to purchase a house in 2016 was "ill-conceived" but that he and his wife had hoped making a "marginally higher monthly payment[] while building equity in a home" would be a better financial decision than paying rent.  *Id.*  They had planned to use the Mission Square retirement account for the down payment.  *Id.*  They were able to save the $18,474.00 for the down payment due to receiving Covid stimulus payments and cashing out an old Bank of America IRA.  *Id.*

Under 18 U.S.C. § 3664(k), "the court may, on its own motion, or the motion of any party . . . adjust the payment schedule, or require immediate payment in full, as the interests of justice require."  Springer has requested a hearing on this issue, and clearly more information is needed before the court can fairly determine what the interests of justice require in this case.  Accordingly, Springer's request for a hearing is GRANTED.  The court DEFERS ruling on the garnishment issues until it is able to fully assess the Springers' financial situation, whether it was accurately disclosed at the time of sentencing, and whether it has changed.

## VI. CONCLUSION

Springer's motion to vacate the restitution and requests for writs of *coram nobis* and *audita querela* (Dkts. 406, 413) are DENIED.  Springer's request for a hearing on the garnishments (Dkts. 416, 417) is GRANTED.  The court's case manager will coordinate with the parties to set this hearing.  The court DEFERS ruling on the motion to quash the writs of garnishment and exemptions (Dkts. 396, 416, 417) until the hearing.

Signed at Houston, Texas on February 22, 2022.

_____
Gray H. Miller
Senior United States District Judge